UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DANIEL COOK,

                    Plaintiff,                              Case No. 1:21-cv-613

v.                                                          Honorable Paul L. Maloney

ERICA HUSS et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying Rule 21, the Court will drop Defendants MDOC, Washington, Unknown Party #1, Vashaw, Maranka, Wood, Brown, Howard, Kelley, Leitheim, Mygrant, Wellman, Stambaugh, Martens, Fornwalt, Wells, Jex, Watkins, Demps, Dozeman, Caffiero, Psychiatrist Unknown Party #2, and Unknown Party #3 from this action and dismiss the claims against them without prejudice. The Court will further dismiss without prejudice as misjoined the claims against Defendants Zupon, Novak, Traylor, and Davids other than Plaintiff's claims that they investigated or were involved with the grievance related to Plaintiff's lost legal documents.

Additionally, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A;

42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also resolve Plaintiff's pending motions.

## Discussion

### I.    Background

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues the MDOC, MDOC Director Heidi Washington, and MDOC "Manager/Director of Mental Health" Unknown Party #1. Plaintiff also sues the following ICF staff: Warden John Davids; Deputy Warden Unknown Vashaw; Assistant Deputy Warden (ADW) Unknown Traylor; Unit Chief Unknown Maranka; Assistant Resident Unit Supervisor (ARUS) Unknown Luther; Captain Unknown Wood; Lieutenants Unknown Brown, Unknown Howard, Unknown Kelley, and Unknown Leitheim; Correctional Officers Unknown Mygrant, Unknown Wellman, Unknown Stambaugh, Unknown Martens, Unknown Fornwalt, Unknown Wells, Unknown Jex, and Unknown Watkins; Hearings Investigator Unknown Demps; Law Librarian Techs Unknown Zupon and Unknown Novak; Psychiatrist Unknown Party #2; Psychologist Unknown Dozeman; Nurse Unknown Caffiero; and Unknown Party #3.[1]

---

[1] Plaintiff does not know what position Defendant Unknown Party #3 holds, only that it is an ICF "staff member who authorized paper restrictions on Plaintiff." (Am. Compl., ECF No. 18, PageID.319.)

2

### A.     Procedural history

Previously, in an order filed on August 20, 2021 (ECF No. 10), the Magistrate Judge directed Plaintiff to file an amended complaint because his original complaint spanned 223 pages and alleged conduct by 108 misjoined defendants at 4 prisons over 3 years. Plaintiff filed objections. (ECF No. 12.) In an order filed on October 8, 2021 (ECF No. 17), the undersigned granted Plaintiff 70 days to file an amended complaint but otherwise denied Plaintiff's objections. Soon thereafter, the Magistrate Judge granted Plaintiff's request for a copy of his entire 223-page original complaint to facilitate drafting an amended complaint. Although Plaintiff's amended complaint was entered onto the docket the day before the Magistrate Judge issued that order, Plaintiff has not sought leave to file a second amended complaint with the benefit of access to the full original complaint.

### B.     Factual allegations

Plaintiff's amended complaint describes several events that predominantly occurred at ICF during October and November 2018. Several months earlier, in February 2018, Plaintiff filed a complaint in *Cook v. Corizon Health, Inc.*, No. 2:18-cv-25 (W.D. Mich.). Plaintiff appears to allege that his litigation in *Cook v. Corizon* earned him a reputation, and as a result, all of the misconduct described in the instant amended complaint is retaliation for "pursuing the action and [Plaintiff] being known as a litigant." (Am. Compl., ECF No. 18, PageID.322.)

In the earliest conduct described by the amended complaint, Plaintiff alleges that Defendant Luther lost documents that Plaintiff had prepared for *Cook v. Corizon*. Plaintiff states that on October 22, 2018, he gave Defendant Luther 47 pages of discovery requests to be photocopied. Purportedly under MDOC policy, Plaintiff should have received the original documents and the photocopies within 72 hours. He did not, so he began inquiring about their whereabouts. In

response to Plaintiff's inquiries, on October 29, 2018, Luther told Plaintiff that he had given the documents to the law library staff.

After speaking with Defendant Luther, Plaintiff filed a grievance complaining of the lost documents. Plaintiff alleges that Defendants Zupon, Traylor, and Davids interfered with his litigation. Plaintiff apparently argues that Zupon, Traylor, and Davids "forged the grievance process" because someone returned his grievance form with a receipt date and identifier number but lacking a response and any signatures beyond his own. (*See* ECF No. 18-2, PageID.350.) Plaintiff raised the issue, and on November 2, 2018, or perhaps sometime later,[2] he received a full response with signatures. (*See* ECF No. 18-3, PageID.351.) On November 2, 2018, Defendants Zupon and Novak also interviewed Plaintiff regarding the grievance. Zupon and Novak purportedly said that Luther "probably failed to process the copies," and that it would not matter anyway because Plaintiff had been placed on a paper restriction. Although the complaint is not altogether clear, it appears that Plaintiff never received the documents.

The remainder of the complaint bears little connection to the loss of Plaintiff's documents. Plaintiff alleges that on October 30, 2018, he placed a message to corrections officers in his cell door window, which obstructed the view into his cell. He contends that he received a "fraudul[e]nt misconduct" as a result even though other prisoners purportedly put messages in their windows. (Am. Compl., ECF No. 18, PageID.333.) On November 5, 2018, after Plaintiff refused to comply with Defendant Howard's directions related to Plaintiff's paper restriction, Howard allegedly called Plaintiff a "white boy" and suggested that prison officials would use tear gas, or some other

---

[2] Plaintiff has not alleged when he received the response nor does he allege that the "Date Returned to Grievant" box on the response, which displays "11-2-18" is incorrect. (ECF No. 18-3, PageID.351.) It is unclear whether the date is among the deceptions that Plaintiff alleges or if Plaintiff first received the Step I response by the time he received his Step II response on December 26, 2018.

similar agent, on him. Plaintiff asserts that he felt "humiliated and emba[r]rassed" by Howard's use of the term "white boy." (*Id.*, PageID.334.)

Shortly thereafter, ICF's Emergency Response Team arrived and restrained Plaintiff. While still inside Plaintiff's cell, Defendant Mygrant held Plaintiff's television, made a comment about it, and the television later disappeared without any receipt.

Plaintiff allegedly moved into a "punishment wing" cell that had feces and blood on multiple surfaces. On November 6, 2018, he "held his door slot open."[3] (*Id.*, PageID.335.) As a result, Plaintiff was removed from his cell, put in "soft standing restraints," and placed in a new cell. (*Id.*, PageID.355–56.) Plaintiff largely remained in restraints for approximately 10 days. On November 9, 2018, while Plaintiff was still in restraints, Defendants Kelley, Mygrant, Caffiero, and possibly others, allegedly kicked him, pulled on his drop chain, punched him, and knocked him over. The next day, on November 10, 2018, Plaintiff was interviewed for an assault misconduct for purportedly injuring Mygrant's knee. Plaintiff remained in the restraints for several more days. On November 14, 2018, Defendant Davids ordered the removal of Plaintiff's restraints, but Plaintiff refused to allow their removal.  Plaintiff refused to permit the removal of his restraints until Davids provided Plaintiff access to all his legal property regardless of his paper restriction. Davids initially rejected Plaintiff's proposal, but on November 16, 2018, Davids returned all of Plaintiff's legal property and Plaintiff permitted the removal of the restraints.

---

[3] Plaintiff's description suggests that he took his food slot "hostage." An inmate takes his food slot "hostage" by preventing it from being closed, typically by placing his hand or arm in the slot. *See, e.g.*, *Earby v. Ray*, 47 F. App'x 744, 745 (6th Cir. 2002). It is against prison rules and a common form of prisoner misbehavior. *See Annabel v. Armstrong*, No. 1:09-cv-796, 2011 WL 3878379, at *4 n.5 (W.D. Mich. Mar. 30, 2011), *report and recommendation adopted* 2011 WL 3878385 (W.D. Mich. Aug. 31, 2011).

On November 20, 2018,[4] Defendant Luther gave Plaintiff the documents that had accumulated while Plaintiff was on the paper restriction. Plaintiff learned that corrections officers had reported Plaintiff multiple times for misconduct. Plaintiff alleges that multiple Defendants falsely reported that Plaintiff refused to participate in his misconduct hearings.

Plaintiff further seeks copies of his medical records without fee. He alleges that he was denied free copies of those records to support his efforts in *Cook v. Corizon*. Plaintiff further alleges that he filed two motions in the earlier action that sought free copies of his medical records. Both motions were denied. Plaintiff states that he continued pursuing a copy of his medical records until 2020, and he "wants to refile his medical claims" that were dismissed on summary judgment in 2018. (Am. Compl., ECF No. 18, PageID.342–43.)

Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, punitive damages, and all costs and fees.

## II.   Failure to comply

Plaintiff's amended complaint fails to comply with the Magistrate Judge's order, which obliges the Court to consider whether the complaint should be dismissed under Rule 41 of the Federal Rules of Civil Procedure.

### A.   Standard

Rule 41(b) of the Federal Rules of Civil Procedure confers on district courts the authority to dismiss an action for failure of a plaintiff to prosecute the claim or to comply with the Rules or any order of the court. *Knoll v. AT&T*, 176 F.3d 359, 362–63 (6th Cir. 1999). The Rule permits a "district court to enter a sua sponte order of dismissal." *Steward v. City of Jackson*, 8 F. App'x

---

[4] Although Plaintiff wrote "11/20/20" in the amended complaint, the context overwhelming suggests that Plaintiff miswrote the year.

294, 296 (6th Cir. 2001) (citing *Link v. Wabash R.R.*, 370 U.S. 626, 630 (1962)). "This measure is available to the district court as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties." *Knoll*, 176 F.3d at 362–63. However, a court must consider that "[t]he dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff." *Wu v. T.W. Wang, Inc.*, 420 F.3d at 643 (internal quotation marks omitted). "Contumacious conduct refers to behavior that is 'perverse in resisting authority and stubbornly disobedient.'" *Carpenter v. City of Flint*, 723 F.3d 700, 704–05 (6th Cir. 2013) (quoting *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (quoting *Webster's Third New International Dictionary* 497 (1986))).

Four main factors determine whether a complaint is properly dismissed for failure to prosecute or failure to comply. First, whether the "failure [wa]s due to willfulness, bad faith, or fault." *Schafer*, 529 F.3d at 737 (citing *Knoll*, 176 F.3d at 363). Second, whether "the adversary was prejudiced" by the failure to prosecute. *Id.* (citing *Knoll*, 176 F.3d at 363). Third, whether the court issued any "warn[ings] that failure to cooperate could lead to dismissal." *Id.* (citing *Knoll*, 176 F.3d at 363). Finally, whether the court "imposed or considered before dismissal" any other "less drastic sanctions." *Id.* (citing *Knoll*, 176 F.3d at 363). Moreover, "[a]lthough typically none of the factors is outcome dispositive, . . . a case is properly dismissed . . . where there is a clear record of delay or contumacious conduct." *Knoll*, 176 F.3d at 363.

B.      **Analysis**

In the instant case, the Court arguably would be justified in dismissing the complaint for failure to comply with an order of the Court. Plaintiff's original complaint "encompasse[d] 223 pages and allege[d] conduct" spanning 3 years "by 108 defendants at the Michigan Department of Corrections (MDOC) offices in Lansing, Michigan, and at 4 different MDOC prisons." (Order to

File Am. Compl., ECF No. 10, PageID.278.) As the Court previously explained when it denied most of Plaintiff's objections, "[t]he Magistrate Judge provided a concise explanation" when issuing an order directing Plaintiff to file an amended complaint because "no single transaction or occurrence connect[ed] all of the defendants." (Order Den. Objs. in Part, ECF No. 17, PageID.313.) The Magistrate Judge instructed Plaintiff that under Rule 20 of the Federal Rules of Civil Procedure, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." (ECF No. 10, PageID.280 (quoting *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009))). Presumably to help Plaintiff streamline the allegations, the Magistrate Judge further directed that Plaintiff limit his amended complaint to 30 pages and restrict "the statement of his claim to factual allegations not legal arguments." (*Id.*) The Magistrate Judge twice warned Plaintiff that failure to comply with the order "may result in the dismissal without prejudice of Plaintiff's complaint." (*Id.*; *see also id.*, PageID.281.) Notwithstanding the Magistrate Judge's warnings, Plaintiff has demonstrated a resistance to authority and a penchant for disobedience.

### 1.    Contumacious

First, Plaintiff's objections (ECF No. 12) evinced not "honorable boldnes[s]" so much as "impudent sawcinesse." *William Shakespeare*, *2 Henry IV* act 2, sc. 1, l. 125–26. At the outset of his list of objections, Plaintiff reasonably suggested that as a pro se litigant, he may "lack[] the knowledge or understanding of" relevant "Law[s], Rule[s], Procedure[s] or part[s] of the US Const[itution]." (ECF No. 12, PageID.288.) Yet rather than trust that the Magistrate Judge may indeed have superior expertise with the application of the Federal Rules of Civil Procedure related to the joinder of parties, Plaintiff objected with largely conclusory statements and defiance. In support of his challenge to the misjoined Defendants, Plaintiff offered only that the "45 claims that

[Plaintiff] raised in his original complaint . . . are related" because all of the conduct was in retaliation for his lawsuit, *Cook v. Corizon*, No. 2:18-cv-25 (W.D. Mich.). This statement did not at all explain how the conduct that spanned over three years and involved more than 100 Defendants at multiple prisons and administrative offices all arose out of the same transaction or occurrence. Plaintiff further challenged that "there [wa]s no way possible he c[ould] prepare the amended complaint within 28 days." (ECF No. 12, PageID.289.) His assertion appeared to contemplate filing an abridged version of his full original complaint. This seemed more likely because he also opposed the 30-page restriction for his factual allegations, asserting that "We are talking about three years of facts, multiple claims, multiple defendants, claims for relief and more." (*Id.*) In Plaintiff's view, the Magistrate Judge did not offer expertise to help Plaintiff hone the complaint to comply with the Federal Rules of Civil Procedure. Instead, Plaintiff accused the Magistrate Judge of "want[ing] the original complaint forgotten." (*Id.*, PageID.290.) Plaintiff's defiance wastes judicial resources.[5]

Clearly, Plaintiff's resistance to the Magistrate Judge's order to amend the complaint can be described as contumacious. *See Carpenter*, 723 F.3d at 704–05.

### 2.    Willfulness

More importantly, Plaintiff's amended complaint willfully defies the Magistrate Judge's order. Plaintiff's amended complaint again protests the imposed page restriction before employing

---

[5] The Court also notes the disregard that Plaintiff shows to judicial resources. Plaintiff waited nearly three years after the conduct his complaint alleges to initiate this action. Notwithstanding his cumbersome pleadings and motions, Plaintiff has repeatedly filed motions to expedite the screening of his complaint, including the first motion (ECF No. 3) that he filed with the original 223-page complaint.

Plaintiff's defiance detracts from the Court's ability to identify and resolve other pending matters with urgency including, for example, legitimate claims brought by prisoners who are in imminent danger.

what he apparently believes is a loophole to incorporate his original complaint by reference. Plaintiff asserts that "[t]he original complaint . . . shall be known hereafter as Ex. No. 1 . . . [and] will contain/state a more d[e]scriptive detail of facts that will be referred to throughout this Amended Complaint." (Am. Compl., ECF No. 18, PageID.323.) He directs that, "[w]hen Ex. No. 1 or ECF No[.] 1 is referenced [in the amended complaint], it will be on the reader or screener to locate the supporting facts or reference" in the original complaint. (*Id.*) Plaintiff clearly seeks to flout the Magistrate Judge's page restriction that limited the amended complaint to 30 pages.

Plaintiff's egregious defiance is even more troubling when considering that he uses less than 13 of those 30 pages to describe factual allegations. (*See id.*, PageID.331–44.) The amended complaint's form directed Plaintiff to "State here the **facts** of your case." (*Id.*, PageID.331.) The form instructed that Plaintiff could, if necessary, attach extra pages to describe those facts. Instead, Plaintiff attaches more than eight pages describing what he believes are the legal theories supporting his claims.[6] (*Id.*, PageID.323–31.) Plaintiff also abandons the page of the local form that directed him to briefly state the relief requested; Plaintiff omits that page from his filing. He apparently prefers to dedicate nearly three pages of the complaint to, among other forms of relief, attributing more than $30 million in compensatory and punitive damages to each of his purported claims. (*Id.*, PageID.344–46.)

---

[6] This too is an act of defiance. The amended complaint form directs, "**Do not give any legal arguments or cite any cases or statutes.**" (Am. Compl., ECF No. 18, PageID.322.) Plaintiff's amended complaint plainly defies these instructions, and it is replete with legal arguments, many of which are utterly misplaced. Plaintiff argues, for example, that Defendant Howard violated 42 U.S.C. § 2000e, of Title VII of the Civil Rights Act of 1964 when Howard called Plaintiff a "white boy." (Am. Compl., ECF No. 18, PageID.324–25.) Notwithstanding Plaintiff's citation to a section that merely defines terms, Title VII prohibits *employment* discrimination. *See, e.g.*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006); 42 U.S.C. §§ 2000e to 2000e-17. Plaintiff's invocation of Title VII is wholly inappropriate, but that certainly is not the only inappropriate legal argument among the eight pages.

Furthermore, although the amended complaint represents a vast improvement over the original, Plaintiff's willful obstinance is plain. In his original complaint, Plaintiff alleged that all 108 Defendants "retaliated against him for bringing and pursuing redress [in] a legal action" in 2018. (Compl., ECF No. 1, PageID.28.) In other words, Plaintiff's 2018 action purportedly motivated each of the 45 "claims" described in the complaint. In the order to file an amended complaint, the Magistrate Judge explained the conditions provided by Rule 20 under which a Plaintiff may name multiple defendants in a single action. (ECF No. 10.) The Magistrate Judge and the undersigned each concluded that, notwithstanding Plaintiff's allegations of retaliation, the complaint failed to comply with Rule 20. Yet, Plaintiff remains resolute. He states that he "reserves his right to Amend and Supplement the[] 45 claims [from the original complaint]" after "the facts come forth establishing [the] relation[ship]." (Am. Compl., ECF No. 18, PageID.322.)

Plaintiff has plainly shown a willfulness in his defiance of the Magistrate Judge's order.

### 3.    Earlier warnings

The Magistrate Judge previously warned that failure to comply with the imposed restrictions may result in the dismissal of the complaint. (ECF No. 10, PageID.280, 281.)

### 4.    Prejudice to adversaries

Because no Defendant has been served, Plaintiff's conduct has not palpably prejudiced his adversaries.

### 5.    Imposition or consideration of less drastic sanctions

As noted above, the Magistrate Judge already imposed a page restriction presumably to help Plaintiff hone his sprawling complaint. The Court has also considered less drastic sanctions or an order directing Plaintiff to file a second amended complaint. Reviewing another amended complaint would allow this action to further divert judicial resources from other matters and to what benefit.

### 6.      Sanction determination

Upon consideration of the above factors and Plaintiff's contumacious conduct, the Court determines that Plaintiff's complaint *may* be dismissed for failure to comply with the Magistrate Judge's order. *See Knoll*, 176 F.3d at 363. Notwithstanding the Court's determination that the complaint may be dismissed for failure to comply under the standard set forth by *Knoll* and *Schafer*, the Court concludes that at this juncture a prospective sanction is preferred.

The Court will impose the following restrictions on Plaintiff's future complaints filed with the United States District Court for the Western District of Michigan. First, Plaintiff must file any complaint on the form as is required by Local Civil Rule 5.6. *See* W.D. Mich. LCivR 5.6(a). Plaintiff must limit the statement of his claim to factual allegations not legal theories. He may not abandon pages of the form, but he may supplement individual sections of the form with attached pages. Next, Plaintiff must limit all future complaints to 25 pages. Finally, Plaintiff must comply with the rules of joinder, which are explained in detail below. Any failure by Plaintiff to comply with the restrictions described herein may result in the summary dismissal without prejudice of a future complaint.

## III.   Pending motions

Plaintiff also has motions pending before the Court. He has filed motions to expedite screening of the amended complaint (ECF No. 21) and to inform him why screening was delayed (ECF No. 24).

The Court will deny Plaintiff's motion to expedite the screening of his complaint. District courts generally have substantial deference to manage their dockets. *See In re Delta Air Lines*, 310 F.3d 953, 958 (6th Cir. 2002); *Roshan Assoc., Inc. v. Motiva Enter.*, 66 F. App'x 525 (5th Cir. 2003) ("We afford the district court considerable deference in its management of its busy docket."); *Berry v. District of Columbia*, 833 F.2d 1031, 1037 n.24 (D.C. Cir. 1987) (concluding

that a "trial court's decisions with respect to the management of its docket are normally entitled to deference"); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) (explaining that the district court's docket management decisions are afforded considerable deference, with the circuit court only interfering upon a clear showing of substantial prejudice).

This Court proceeds as expeditiously as possible on all cases filed before it. In deciding how to assign judicial resources most efficiently, the Court considers many factors when prioritizing prisoner civil rights matters. The Court looks to, for example, the presence of allegations of imminent danger; the timeliness of the pleading; the clarity, brevity, and complexity of the factual allegations; whether a prisoner-plaintiff has complied with the form's instructions; and how long the complaint and motions have remained pending.

Plaintiff initiated this action with a bloated complaint that filled three manila envelopes. Beyond the screening of the complaint, Plaintiff required the attention of the Court and the Magistrate Judge on multiple occasions because he filed several motions and objected to the well-explained conclusions of the Magistrate Judge. Moreover, the amended complaint is not clear, brief, or simple. In the amended complaint, Plaintiff asserts a laundry list of violations of federal and state law making it substantially more complicated than most prisoner civil rights complaints. Put simply, Plaintiff's complaint and amended complaint have diverted judicial resources. This diversion of judicial resources inhibits the Court's ability to identify and resolve other pending matters with urgency including, for example, legitimate claims brought by prisoners who are in imminent danger.

For those reasons, Plaintiff's motion to expedite screening of the complaint is properly denied. On the other hand, Plaintiff's second motion asks that the Court explain to him why

screening has been delayed. The Court has done so. The Court will therefore grant Plaintiff's second motion.

## IV.     Misjoinder

Plaintiff brings this action against twenty-eight Defendants, alleging conduct organized as 11 "claims" related to discrete events that occurred over approximately one month. The Court must determine whether Plaintiff has properly joined all of the Defendants in this action.

### A.     Improper joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*,

No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless *one* claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (emphasis added) (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder of parties or claims in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding

in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to

circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his putative claims turn out to be frivolous, malicious, or fail to state a claim. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The Court will look to the first named Defendant and the earliest clear factual allegations involving that Defendant to determine which portions of the action should be considered related.[7] Plaintiff names Defendant Luther as the first Defendant in the list of Defendants within the amended complaint (Am. Compl., ECF No. 18, PageID.318), in what Plaintiff has styled as "claim 1" (*id.*, PageID.323), and in his earliest allegations giving rise to a putative claim (*id.*, PageID.332). As noted above, Plaintiff's first and earliest allegations that reasonably give rise to a claim assert that Defendant Luther lost his documents and Defendants Zupon, Novak, Traylor, and Davids either investigated or were involved in the grievance process.

The conduct of Defendants MDOC, Washington, Unknown Party #1, Vashaw, Maranka, Wood, Brown, Howard, Kelley, Leitheim, Mygrant, Wellman, Stambaugh, Martens, Fornwalt, Wells, Jex, Watkins, Demps, Dozeman, Caffiero, Psychiatrist Unknown Party #2, and Unknown Party #3 is wholly unrelated to Plaintiff's putative claim regarding his lost legal documents.

---

[7] The analysis of joinder must start somewhere. The first-named Defendant is also referenced in the first factual allegations in the complaint involving any Defendant. Therefore, by accepting the first-named Defendant and first factual allegations giving rise to a putative claim as the foundation for this joinder analysis, the Court is considering the issue of joinder of Defendants as Plaintiff has presented it in his complaint.

Moreover, there is neither any right to relief arising out of a single transaction or occurrence, *see* Fed. R. Civ. P. 20(a)(2)(A), nor a question of law or fact, *see* Fed. R. Civ. P. 20(a)(2)(B), that is common to all Defendants. Plaintiff has, therefore, improperly joined to this action Defendants MDOC, Washington, Unknown Party #1, Vashaw, Maranka, Wood, Brown, Howard, Kelley, Leitheim, Mygrant, Wellman, Stambaugh, Martens, Fornwalt, Wells, Jex, Watkins, Demps, Dozeman, Caffiero, Psychiatrist Unknown Party #2, and Unknown Party #3 as well as the claims against Defendants Zupon, Novak, Traylor, and Davids other than Plaintiff's claims that they investigated or were involved with the grievance related to Plaintiff's lost legal documents**.**

## B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined to this action multiple Defendants and the claims against them, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-

18

limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was

tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id.* at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff alleges that Defendants engaged in conduct no earlier than October 22, 2018. Plaintiff filed the instant action on July 16, 2021.[8] Because Plaintiff receives the benefit of tolling during the administrative exhaustion period, *see Brown*, 209 F.3d at 596, and during the pendency of this action, *Kalasho*, 66 F. App'x at 611, Plaintiff has sufficient time in the limitations period to file new complaints against Defendants MDOC, Washington, Unknown Party #1, Vashaw, Maranka, Wood, Brown, Howard, Kelley, Leitheim, Mygrant, Wellman, Stambaugh, Martens, Fornwalt, Wells, Jex, Watkins, Demps, Dozeman, Caffiero, Psychiatrist Unknown Party #2, Unknown Party #3, Zupon, Novak, Traylor, and Davids, and he will not suffer gratuitous harm if claims against these Defendants are dismissed.

---

[8] Plaintiff dated the original complaint July 16, 2021 (ECF No. 1-2, PageID.223), and the envelope was postmarked the same day (*id.*, PageID.225). Plaintiff presumably gave his complaint to prison officials on July 16, 2021. Therefore, the Court concludes that Plaintiff's complaint was filed on July 16, 2021. *See Richard v. Ray*, 290 F.3d 810 (6th Cir. 2002) (holding that a prisoner's complaint is deemed to be filed on the date it was given to prison officials to send to the court).

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants MDOC, Washington, Unknown Party #1, Vashaw, Maranka, Wood, Brown, Howard, Kelley, Leitheim, Mygrant, Wellman, Stambaugh, Martens, Fornwalt, Wells, Jex, Watkins, Demps, Dozeman, Caffiero, Psychiatrist Unknown Party #2, and Unknown Party #3 from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs."); *Carney*, 2008 WL 485204, at *3 (same). The Court will further dismiss without prejudice the claims against Defendants Zupon, Novak, Traylor, and Davids other than Plaintiff's claims that they investigated or were involved with the grievance related to Plaintiff's lost legal documents. If Plaintiff wishes to proceed with his dismissed claims and against the dropped Defendants, he shall do so by filing new civil actions on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*.[9]

## V.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

---

[9] As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. As detailed above in Part II, the Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges that Defendants Luther, Novak, and Zupon "failed to safeguard" his legal documents, and Defendants Davids and Traylor "fraudulized [sic] the grievance process . . . ." (Am. Compl., ECF No. 18, PageID.323.) Plaintiff contends that the Defendants violated rights provided to him under the First, Fifth, Eighth, and Fourteenth Amendments. (*Id.*, PageID.324.)

22

Plaintiff further asserts that "Defendants['] actions also constitute the torts of supervisory negligence, negligence, fraud, aiding and abetting, intentional damage or loss of property[,] and intentional infliction of emotional distress under the law of Mi[chigan]." (*Id.*)

### A.    Retaliation

Plaintiff alleges that Defendants retaliated against him for his prior litigation.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotations omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are

allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendants retaliated against him because he filed a civil rights complaint against health care providers for conduct that occurred at Marquette Branch Prison and ICF. Accordingly, his speculative allegations fail to state a claim.

### B.      Cruel and unusual punishment

Plaintiff also alleges that Defendants Luther, Novak, Zupon, Davids, and Traylor violated his Eighth Amendment rights.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff utterly fails to explain how any of the alleged conduct related to his loss of legal documents supports an Eighth Amendment claim. "To move beyond the pleading stage . . . , an inmate must allege that he has been deprived 'of the minimal civilized measure of life's necessities.'" *Harden-Bey v. Rutter*, 524 F.3d 789 (6th Cir. 2008) (quoting *Rhodes*, 452 U.S. at 347). Plaintiff not alleged facts to show that the loss of his legal documents deprived him of the minimal civilized measure of life's necessities. Plaintiff simply concludes that the loss of his legal documents and the investigation that followed violated his Eighth Amendment rights. However, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Because Plaintiff's allegations of an Eighth Amendment violation are conclusory, he fails to state an Eight Amendment claim. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims.

### C.    Access to the courts

In contrast to Plaintiff's Eighth Amendment claims, Plaintiff's access to the courts claims are a closer call.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

26

Plaintiff asserts that he brought the underlying cause of action as a civil rights action under 42 U.S.C. § 1983. His civil rights claim is the type of case for which there can be an actual injury. *See Thaddeus-X*, 175 F.3d at 391.

Additionally, the claims Plaintiff raised in his prior action appear to be non-frivolous. In order to demonstrate an actual injury, Plaintiff must allege facts to demonstrate that his prior action was non-frivolous. *See Lewis*, 518 U.S. at 353. The instant complaint merely alleges that the earlier action "was against medical person[ne]l and the medical provider Corizon for their failure in treatment of the Plaintiff . . . ." (Am. Compl., ECF No. 18, PageID.322.) This description on its own does not sufficiently allege that Plaintiff's claim was non-frivolous. Upon inspection of that action's docket, Plaintiff's Eighth Amendment claims survived preliminary screening and were not dismissed until summary judgment. Therefore, although Plaintiff has not alleged sufficient facts to demonstrate that the underlying claims were non-frivolous, the Court determines at this early juncture that the claims Plaintiff raised in his cited case were not clearly frivolous.

Crucially, however, Plaintiff has provided very little information about his lost legal documents and has failed to explain how the loss specifically frustrated his litigation. According to the amended complaint, Defendants lost 47 pages of discovery requests and instructions in late October 2018 that Plaintiff presumably intended to send to the defendants in *Cook v. Corizon*. The amended complaint does not explain whether Plaintiff prepared new discovery request documents to replace those that he lost. Yet, even if Plaintiff did not prepare new documents as detailed as the originals, it is not clear why Plaintiff could not have reproduced the essential portions of the lost documents in time to comply with the February 25, 2019, deadline for discovery, which was nearly 4 months after his documents were lost. *See* Order, *Cook v. Corizon Health, Inc.*, No. 2:18-cv-25 (W.D. Mich.), (ECF No. 39, PageID.461).

Furthermore, Defendants' conduct did not close off Plaintiff's ability to submit filings to the court. Between late November 2018 and the discovery deadline in late February 2019, Plaintiff filed more than 10 motions, briefs, objections, and responses. Three of those motions sought preliminary injunctive relief. *See* Mots., *Cook v. Corizon Health, Inc.*, No. 2:18-cv-25 (W.D. Mich.), (ECF Nos. 69, 77, 98).

Importantly, Plaintiff has failed to explain in his instant amended complaint how the loss of his legal documents specifically frustrated his litigation. In his earlier action, seven of the individual defendants were dismissed because the court concluded that Plaintiff failed to exhaust administrative remedies against them. *See Cook v. Corizon Health, Inc.*, No. 2:18-cv-25, 2019 WL 3043906, at *7 (W.D. Mich. Apr. 25, 2019), *report and recommendation adopted*, No. 2:18-cv-25, 2019 WL 2223252 (W.D. Mich. May 23, 2019), *aff'd*, No. 19-1660, 2020 WL 3286222 (6th Cir. Feb. 18, 2020). Plaintiff's claim against Corizon Health, Inc., was dismissed because he further failed to show that it had an unconstitutional policy or custom. *Id.* at *16. As to the remaining four defendants, the magistrate judge who authored the report and recommendation determined that Plaintiff failed to demonstrate that those defendants were deliberately indifferent because the dispute came down to a difference of opinion in the course of treatment:

> [Defendants] . . . took appropriate medical actions in response to Plaintiff's gastrointestinal complaints and medical issues. Plaintiff received extensive treatment from these medical providers . . . . Plaintiff's complaint is not that he was denied medical care. Plaintiff believes that he has a serious disease and that he requires additional medical tests and procedures to resolve his abdominal issues. Plaintiff has gone to great lengths to manipulate the system. It is undisputed that he lied about overdosing on medication just so he could go to the hospital emergency room to request medical imag[ing] tests. When he received those tests, the results were normal. Plaintiff does suffer from chronic constipation/obstipation. Plaintiff has received extensive medical care. Plaintiff disagrees with the course of his treatment.

*Id.* at *15. In his instant amended complaint, Plaintiff fails to offer any allegation to undermine the dismissal of any of his claims against any defendant in *Cook v. Corizon Health, Inc.* His assertion

that the loss of his documents "was a large factor in why his action was dismissed" (Am. Compl., ECF No. 18, PageID.324), appears to be nothing more than rank speculation. Consequently, Plaintiff fails to allege facts to support that he suffered an actual injury.

Therefore, because Plaintiff fails to allege that he suffered an actual injury, his allegations fail to state an access to the courts claim. Accordingly, the Court will dismiss his claim.

### D. Grievances

Plaintiff alleges that Defendants Zupon, Traylor, and Davids improperly documented his grievance. As described below, Plaintiff's allegations related to the grievance fail to state either a due process claim or an access to the courts claim.

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Likewise, Plaintiff's right to petition government is not violated by Defendant's failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for*

*Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim related to his grievance.

### E.      State law

As noted above, Plaintiff also alleges several state-law claims. To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state-law claims, the Court declines to exercise jurisdiction.

Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 455 (6th Cir. 2021) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (recognizing that once a federal court no longer has federal claims to resolve, it "should not ordinarily reach the plaintiff's state-law claims); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon*, 465 F.3d at 728 ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## Conclusion

The Court will deny Plaintiff's motion to expedite screening and grant Plaintiff's motion for information. Additionally, because Plaintiff has failed to comply with an order of the court, the Court will impose sanctions.

Having reviewed the complaint under Rules 18 and 20 of the Federal Rules of Civil Procedure, the Court will drop, pursuant to Rule 21, Defendants MDOC, Washington, Unknown Party #1, Vashaw, Maranka, Wood, Brown, Howard, Kelley, Leitheim, Mygrant, Wellman, Stambaugh, Martens, Fornwalt, Wells, Jex, Watkins, Demps, Dozeman, Caffiero, Psychiatrist Unknown Party #2, and Unknown Party #3 from this action and dismiss the claims against them without prejudice. The Court will further dismiss without prejudice as misjoined the claims against Defendants Zupon, Novak, Traylor, and Davids other than Plaintiff's claims that they investigated or were involved with the grievance related to Plaintiff's lost legal documents.

Having further conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). His state-law claims will be dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00

appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated:   April 22, 2022                    /s/ Paul L. Maloney
                                          Paul L. Maloney
                                          United States District Judge