UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DANIEL COOK,

               Plaintiff,

v.

ERICA HUSS et al.,

               Defendants.

_____/

Case No. 1:21-cv-613

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 6.) In an order filed on August 20, 2021 (ECF No. 10), the Magistrate Judge directed Plaintiff to file an amended complaint because his original complaint spanned 223 pages and alleged conduct by 108 misjoined defendants at 4 prisons over 3 years. Plaintiff filed objections. (ECF No. 12.) In an order filed on October 8, 2021 (ECF No. 17), the undersigned granted Plaintiff 70 days to file an amended complaint, but otherwise denied Plaintiff's objections.

Plaintiff filed his amended complaint (ECF No. 18) on October 15, 2021. In an opinion, order, and judgment (ECF Nos. 26, 27, 28) entered on April 22, 2022, the Court dropped Defendants MDOC, Washington, Unknown Party #1, Vashaw, Maranka, Wood, Brown, Howard, Kelley, Leitheim, Mygrant, Wellman, Stambaugh, Martens, Farnwalt, Wells, Jex, Watkins, Demps, Dozeman, Caffiero, Psychiatrist Unknown Party #2, and Unknown Party #3 as misjoined and dismissed Plaintiff's claims against those Defendants without prejudice. The Court also dismissed without prejudice as misjoined Plaintiff's claims against Defendants Zupon, Novak,

Traylor, and Davids other than any claims that they investigated or were involved with the grievance related to Plaintiff's lost legal documents. The Court dismissed Plaintiff's remaining federal claims for failure to state a claim and dismissed Plaintiff's state law claims without prejudice after declining to exercise supplemental jurisdiction over such claims. Finally, the Court imposed prospective filing sanctions for Plaintiff's failure to comply with the Magistrate Judge's August 20, 2021, order directing Plaintiff to follow certain guidelines when preparing his amended complaint.

Plaintiff subsequently filed a timely notice of appeal. (ECF No. 29.) In an order (ECF No. 38) issued on December 19, 2022, the United States Court of Appeals for the Sixth Circuit concluded that this Court erred in finding that Plaintiff's claims were misjoined. The Sixth Circuit noted that "[a]lthough [Plaintiff's] amended complaint alleges several distinct incidents, the pleading ties each incident to [Plaintiff's] pursuit of his missing legal documents." (*Id.*, PageID.464.) The Sixth Circuit noted that Plaintiff's allegations "might or might not state a plausible claim for relief, but [Plaintiff's] pleading plainly alleges that they arise out of a related series of transactions or occurrences and raise common questions of fact and law." (*Id.*, PageID.465.) The Sixth Circuit further concluded that this Court erred by imposing filing sanctions upon Plaintiff, "leaving it to [this Court] to decide on remand whether to reimpose similar filing sanctions for the other reasons provided in its order." (*Id.*) The Sixth Circuit affirmed this Court's dismissal of the following claims for failure to state a claim: (1) Plaintiff's retaliation claim against Defendants Luther, Davids, Traylor, and Zupon premised upon the loss of his legal documents and the handling of his grievance regarding such; (2) Plaintiff's Eighth Amendment claim regarding the loss of his legal documents; (3) Plaintiff's First Amendment access to the courts claim; and (4) Plaintiff's claims related to the alleged mishandling of his grievance. (*Id.*, PageID.466–67.)

Finally, the Sixth Circuit reversed this Court's dismissal of Plaintiff's state law claims given the conclusion that the Court erred in dismissing certain federal claims. (*Id.*, PageID.467.) The Sixth Circuit's mandate (ECF No. 40) issued on January 10, 2023.

In light of the Sixth Circuit's mandate, the Court will vacate its previous opinion, order, and judgment (ECF Nos. 26, 27, 28) to the extent that the Court initially dismissed claims as misjoined or because the Court declined to exercise supplemental jurisdiction over them, as well as to the extent that the Court imposed prospective filing restrictions on Plaintiff. The matter, therefore, is now before the Court pursuant to Plaintiff's amended complaint (ECF No. 18) and the claims set forth therein that were initially dismissed as either misjoined or because the Court declined to exercise supplemental jurisdiction over them. As the Court previously advised Plaintiff, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims against the following Defendants for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c): Defendants Luther, Novak, Zupon, Traylor, Wood, Howard, Maranka, Dozeman, MDOC, Brown, Leitheim, Wellman, Washington, Demps, and Unknown Parties #1, #2, and #3. The Court will dismiss Plaintiff's state law claims against those Defendants without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

3

The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims seeking declaratory and injunctive relief; (3) Plaintiff's First Amendment retaliation and access to the Courts claims; (4) Plaintiff's Fifth Amendment due process and double jeopardy claims; (5) Plaintiff's Eighth Amendment claims premised upon (a) verbal harassment, (b) mental health issues, (c) misconduct proceedings, and (d) lack of access to medical records; and (5) Plaintiff's Fourteenth Amendment due process and equal protection claims. The following claims remain in the case: (1) Plaintiff's Eighth Amendment personal capacity damages claims against Defendants Davids, Vashaw, Kelley, Stambaugh, Mygrant, Martens, Farnwalt, Wells, Jex, Watkins, and Caffiero premised upon the use of restraints and excessive force; and (2) Plaintiff's state law claims against Defendants Davids, Vashaw, Kelley, Stambaugh, Mygrant, Martens, Farnwalt, Wells, Jex, Watkins, and Caffiero.

## Discussion

### I.      Background

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues the MDOC, MDOC Director Heidi Washington, and MDOC "Manager/Director of Mental Health" Unknown Party #1. Plaintiff also sues the following ICF staff: Warden John Davids; Deputy Warden Unknown Vashaw; Assistant Deputy Warden (ADW) Unknown Traylor; Unit Chief Unknown Maranka; Assistant Resident Unit Supervisor (ARUS) Unknown Luther; Captain Unknown Wood; Lieutenants Unknown Brown, Unknown Howard, Unknown Kelley, and Unknown Leitheim; Correctional Officers Unknown Mygrant, Unknown Wellman, Unknown Stambaugh, Unknown Martens, Unknown Farnwalt, Unknown

4

Wells, Unknown Jex, and Unknown Watkins; Hearings Investigator Unknown Demps; Law Librarian Techs Unknown Zupon and Unknown Novak; Psychiatrist Unknown Party #2; Psychologist Unknown Dozeman; Nurse Unknown Caffiero; and Unknown Party #3.[12] Plaintiff sues all Defendants in their official and personal capacities.

As an initial matter, in his amended complaint, Plaintiff asserts that "[t]he original complaint . . . shall be known hereafter as Ex. No. 1 . . . [and] will contain/state a more d[e]scriptive detail of facts that will be referred to throughout this Amended Complaint." (Am. Compl., ECF No. 18, PageID.323.) He directs that, "[w]hen Ex. No. 1 or ECF No[.] 1 is referenced [in the amended complaint], it will be on the reader or screener to locate the supporting facts or reference" in the original complaint. (*Id.*) The amended complaint form instructed that Plaintiff could attach extra pages, if necessary, to set forth his facts for relief. Plaintiff, however, has not done so, instead assuming that the Court will comb through his voluminous original complaint and locate the facts for him. This the Court will not do. Instead, the Court will consider only the facts and allegations set forth in the amended complaint and will not consider any that are set forth in the original complaint.

Plaintiff's amended complaint describes several events that predominantly occurred at ICF during October and November 2018. Several months earlier, in February 2018, Plaintiff filed a complaint in *Cook v. Corizon Health, Inc.*, No. 2:18-cv-25 (W.D. Mich.). Plaintiff appears to allege that his litigation in *Cook v. Corizon* earned him a reputation, and as a result, all of the misconduct

---

[1] Plaintiff does not know what position Defendant Unknown Party #3 holds, only that it is an ICF "staff member who authorized paper restrictions on Plaintiff." (Am. Compl., ECF No. 18, PageID.319.)

[2] Plaintiff listed MBP Warden Erica Huss in the caption of his amended complaint (*id.*, PageID.317), but does not name her in the list of defendants and does not mention her in the body of the amended complaint. For that reason alone, Huss will be dismissed to the extent Plaintiff intended to name her as a Defendant.

described in the instant amended complaint is retaliation for "pursuing the action and [Plaintiff] being known as a litigant." (Am. Compl., ECF No. 18, PageID.322.)

In the earliest conduct described by the amended complaint, Plaintiff alleges that Defendant Luther lost documents that Plaintiff had prepared for *Cook v. Corizon*. Plaintiff states that on October 22, 2018, he gave Defendant Luther 47 pages of discovery requests to be photocopied. (*Id.*, PageID.332.) Purportedly under MDOC policy, Plaintiff should have received the original documents and the photocopies within 72 hours. (*Id.*) He did not, so he began inquiring about their whereabouts. (*Id.*) In response to Plaintiff's inquiries, on October 29, 2018, Defendant Luther told Plaintiff that he had given the documents to the law library staff. (*Id.*)

After speaking with Defendant Luther, Plaintiff filed a grievance complaining of the lost documents. (*Id.*) Plaintiff alleges that Defendants Zupon, Traylor, and Davids interfered with his litigation. (*Id.*) Plaintiff apparently argues that Defendants Zupon, Traylor, and Davids "forged the grievance process" because someone returned his grievance form with a receipt date and identifier number but lacking a response and any signatures beyond his own. (*Id.*; *see* ECF No. 18-2, PageID.350.) Plaintiff raised the issue, and on November 2, 2018, or perhaps sometime later,[3] he received a full response with signatures. (*See* ECF No. 18-3, PageID.351.)

On or about October 30, 2018, Plaintiff placed a "small envelope sign in his door window requesting to speak with the appropriate authority re: his missing legal documents." (ECF No. 18, PageID.332–33.) Defendant Wellman "wrote the Plaintiff a fraudulent misconduct indicating his vision was obstructed." (*Id.*, PageID.333.) According to Plaintiff, Defendant Wellman "did not

_____

[3] Plaintiff has not alleged when he received the response, nor does he allege that the "Date Returned to Grievant" box on the response, which displays "11-2-18," is incorrect. (ECF No. 18-3, PageID.351.) It is unclear whether the date is among the deceptions that Plaintiff alleges or if Plaintiff first received the Step I response by the time he received his Step II response on December 26, 2018.

write anyone else misconducts who had paper or signs in their windows." (*Id.*) Defendant Unknown Party #3 then authorized that Plaintiff be subject to a paper restriction for 30 days. (*Id.*)

On November 2, 2018, Defendants Zupon and Novak also interviewed Plaintiff regarding the grievance. (*Id.*, PageID.333.) They purportedly told Plaintiff that Defendant Luther "probably failed to process the copies," and that it would not matter anyway because Plaintiff had been placed on a paper restriction. (*Id.*) Although the amended complaint is not altogether clear, it appears that Plaintiff never received the documents.

On November 5, 2018, Defendant Howard "stopped at the Plaintiff's cell and told him that they [we]re going to be taking all of his legal property and anything paper related and that he would be gassed and extracted from his cell if he refused." (*Id.*, PageID.333–34.) Plaintiff responded that he needed his legal property to pursue his lawsuit. (*Id.*, PageID.334.) Defendant Howard walked away, and "went up to other African American prisoners['] doors," advising them that "s***'s about to get real, got us a 'white boy' to gas." (*Id.*) Plaintiff felt humiliated and embarrassed, as well as threatened, by Defendant Howard's use of the term "white boy." (*Id.*) Shortly thereafter, ICF's Emergency Response Team arrived and restrained Plaintiff. (*Id.*) Plaintiff was taken out of his cell, and Defendant Mygrant went into the cell. (*Id.*) Defendant Mygrant held Plaintiff's television up and made a comment about it. (*Id.*) Plaintiff contends this was the last time he saw his television, and that he did not receive any receipt or documentation that it had been confiscated. (*Id.*) All of Plaintiff's legal property "and anything paper related" were removed from the cell and restricted. (*Id.*, PageID.334–35.)

Plaintiff allegedly moved into a "punishment wing" cell that had feces and blood on multiple surfaces. (*Id.*, PageID.335.) He contends that Defendants Kelley, Luther, and Bennett

ignored his requests for "modified legal access time." (*Id.*) His requests for "sanitation" and grievance forms were also ignored. (*Id.*)

On November 6, 2018, Plaintiff "held his door slot open."[4] (*Id.*) He did so to "demand[] proper sanitation of his cell, vital sign check, and legal access." (*Id.*) Defendant Kelley told Plaintiff that he would be taken for a vital signs check. (*Id.*) Plaintiff cuffed up and was moved from his cell without incident. (*Id.*) While escorting Plaintiff down the hall, Defendant Kelly stated, "I'm done playing games with this b****." (*Id.*) Plaintiff was placed in the shower, his cuffs were removed, and Defendant Stambaugh placed him in "soft standing restraints." (*Id.*) Plaintiff contends that Defendant Stambaugh "yank[ed] and wrench[ed] on [the restraints] like he was tethering a horse." (*Id.*) The restraints caused Plaintiff pain. (*Id.*) Plaintiff was escorted to a new cell, where Defendant Stambaugh "tightened the drop chain to a point where the Plaintiff could barely stand." (*Id.*, PageID.336.)

Plaintiff's requests to be removed from the restraints were ignored. (*Id.*) He claims he could not stand up to turn his water on, and that he had to "fold his mattress by his toilet to gain the elevation he needed to drink water." (*Id.*) Plaintiff repeatedly asked that the restraints be loosened because of the pain and swelling. (*Id.*)

On November 9, 2018, Defendant Kelley offered to remove the restraints and ordered Plaintiff to stand and back up to the door. (*Id.*) Plaintiff stated that he could not stand. (*Id.*) Defendant Kelley left and returned with the Emergency Response Team, including Defendants

---

[4] Plaintiff's description suggests that he took his food slot "hostage." An inmate takes his food slot "hostage" by preventing it from being closed, typically by placing his hand or arm in the slot. *See, e.g.*, *Earby v. Ray*, 47 F. App'x 744, 745 (6th Cir. 2002). It is against prison rules and a common form of prisoner misbehavior. *See Annabel v. Armstrong*, No. 1:09-cv-796, 2011 WL 3878379, at *4 n.5 (W.D. Mich. Mar. 30, 2011), *report and recommendation adopted*, 2011 WL 3878385 (W.D. Mich. Aug. 31, 2011).

Mygrant and Caffiero. (*Id.*) Plaintiff duck-walked to the door and backed out of the cell as instructed when the door was opened. (*Id.*) Defendant Kelley then told Plaintiff that Defendant Vashaw ordered them to tighten the restraints. (*Id.*) Plaintiff objected, stating they were already too tight. (*Id.*) Defendants Kelley, Mygrant, Caffiero, and other members of the Emergency Response Team (including several of the named Defendants) then kicked Plaintiff, pulled on his drop chain, punched him, and knocked him over. (*Id.*, PageID.337.) Plaintiff was placed back in the cell. (*Id.*) He avers that he could not reach the toilet and water buttons while restrained and soiled himself on the floor. (*Id.*)

Plaintiff received multiple misconducts "for not standing up and backing to the door to be removed from the restraints." (*Id.*) On November 10, 2018, Registered Nurse Moody (not a party) saw that Plaintiff's hands were swollen and asked Sergeant Greenfield (not a party) to open the door slot so she could examine Plaintiff's hands. (*Id.*, PageID.338.) Greenfield and Moody then entered Plaintiff's cell and removed the restraints. (*Id.*) Plaintiff had several blisters and small cuts around his wrists, and his hands were "so swollen that there [were] no creases or fold cracks around the knuckles." (*Id.*) Greenfield told Plaintiff that he could not remove the drop chain "per the supervisor." (*Id.*) He also told Plaintiff "the Warden has been told and the Director has been contacted." (*Id.*)

That same day, Greenfield interviewed Plaintiff regarding a "fraudulent assault misconduct" for purportedly injuring Defendant Mygrant's knee. (*Id.*) Plaintiff claims that he "was never offered an opportunity to participate in a hearing related to this misconduct." (*Id.*) Defendants Leitheim and Stambaugh falsely told the hearing officer that Plaintiff did not want to attend the misconduct hearing. (*Id.*, PageID.338–39.)

Plaintiff remained in the restraints for several more days. (*Id.*, PageID.339.) He "suffer[ed] a serious mental health crisis" and was deteriorating mentally. (*Id.*) Plaintiff claims that Defendants Dozeman, Maranka, and Unknown Party #2 "did nothing" and "sat by while the Plaintiff was improperly restrained for near 9 days." (*Id.*) They also "failed to implement a treatment plan." (*Id.*) Plaintiff also faults Defendants MDOC, Washington, and Unknown Party #1 for "fail[ing] to have in place a treatment plan for a prisoner in a mental crisis situation such as prolonged imposed restraints." (*Id.*)

On November 14, 2018, Defendant Davids ordered the removal of Plaintiff's restraints. (*Id.*) Plaintiff asked Defendant Davids for four things: (1) the return of all of his legal property and documents; (2) "housing, food service, and sanitation according to policy"; (3) "to be free from any further retaliation"; and (4) medical attention. (*Id.*, PageID.340.) Registered Nurse Beecher gave Plaintiff antibiotic ointment after checking Plaintiff's vital signs and restraints. (*Id.*) Plaintiff "refused to come out of the restraints until he was allowed legal access." (*Id.*) On November 16, 2018, Defendant Davids returned all of Plaintiff's legal property and the restraints were removed. (*Id.*)

On November 20, 2018,[5] Defendant Luther gave Plaintiff the documents that had accumulated while Plaintiff was on the paper restriction. (*Id.*, PageID.340–41.) Plaintiff learned that officers had issued him "multiple misconducts for refusing to back to the door to be removed from the restraints." (*Id.*, PageID.341.) Plaintiff was never notified of the hearings for these misconducts, and Defendants Wood, Howard, and Brown falsely reported that Plaintiff refused to

---

[5] Although Plaintiff wrote "11/20/20" in the amended complaint, the context overwhelmingly suggests that Plaintiff miswrote the year.

participate in the misconduct hearings. (*Id.*) Plaintiff requested grievance forms and forms to appeal the misconducts; his requests were never answered. (*Id.*)

Plaintiff alleges that by this time, he was "now on indigent status and could not afford copies of his health care records." (*Id.*, PageID.342.) He contends that he was denied free copies of those records to support his efforts in *Cook v. Corizon*. (*Id.*) Plaintiff further states that he filed two motions in that action seeking free copies of his medical records; both motions were denied. (*Id.*) Plaintiff alleges that he continued pursuing a copy of his medical records until 2020, and he "wants to refile his medical claims" that were dismissed on summary judgment in 2018. (*Id.*, PageID.342–43.)

Based on the foregoing, Plaintiff asserts numerous First, Fifth, Eighth, and Fourteenth Amendment violations. Plaintiff also suggests violations of Title VII of the Civil Rights Act of 1964 and the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Additionally, Plaintiff asserts state law claims for negligence, fraud, damage or loss of property, intentional infliction of emotional distress, assault and battery, and false imprisonment.[6] He seeks declaratory and injunctive relief, as well as compensatory and punitive damages, and all costs and fees. (*Id.*, PageID.344–46.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

---

[6] Plaintiff also alleges that Defendants Zupon, Traylor, and Davids violated his rights by improperly documenting his grievance. The Court dismissed Plaintiff's claims regarding grievances, noting that his allegations failed to set forth due process and access to the courts claims. (ECF No. 26, PageID.410–11.) The Sixth Circuit affirmed the dismissal of these claims. (ECF No. 38, PageID.467.) The Court, therefore, will not revisit such claims.

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Claims Against the MDOC

Plaintiff has named the MDOC as a Defendant in this matter. Section 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658

(1978). However, neither the State of Michigan nor the MDOC is a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person.").

Moreover, even if the MDOC or the State of Michigan were "persons" under § 1983, Plaintiff's claims would be properly dismissed because the MDOC and the State of Michigan are immune from suit under the Eleventh Amendment. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

For these reasons, Plaintiff cannot maintain his claims against the MDOC. Accordingly, the Court will dismiss the MDOC as a Defendant.

**B.    Official Capacity Claims**

As noted above, Plaintiff sues all individual Defendants in their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her

official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will*, 491 U.S. at 71; *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

As discussed above, the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. Here, Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiff, however, is no longer confined

14

at ICF, where he avers that the majority of the individual Defendants are employed. The Sixth Circuit has held that transfer to another prison facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Underlying this rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Plaintiff is now incarcerated at MBP, and the majority of the individual Defendants are not employed at that facility. Moreover, with respect to the Defendants that are employed at the MDOC's Central Office (Defendants Washington and Unknown Party #1), Plaintiff's complaint is devoid of facts alleging that they are engaged in ongoing violations of federal law. *See Ladd*, 971 F.3d at 581. Plaintiff is now incarcerated at LRF, and the individual Defendants are not employed at that facility. Plaintiff, therefore, cannot maintain claims for declaratory and injunctive relief against the individual Defendants, and such claims will be dismissed.[7]

### C. Personal Capacity Claims

#### 1. Violations of Title VII

Plaintiff alleges that Defendant Howard violated Title VII of the Civil Rights Act of 1964 by threatening him and calling him "white boy." (ECF No. 18, PageID.324–25.) Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual

---

[7] To the extent Plaintiff seeks declaratory and injunctive relief against Defendants in their individual capacities, such claims will also be dismissed for the reasons set forth above.

with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(a)(1). Title VII, however, is wholly inapplicable to Plaintiff's allegations, as nothing in the complaint suggests that Defendant Howard took an adverse employment action against him. Plaintiff's Title VII claim will, therefore, be dismissed.

### 2.   Violations of HIPAA

Plaintiff suggests that the MDOC and Defendant Washington have violated HIPAA by not implementing procedures that allow an indigent inmate to obtain access to his medical records and copies thereof. (ECF No. 18, PageID.331.) Plaintiff, however, cannot maintain such a claim because there is no private cause of action for a HIPAA violation. *See Burley v. Rider*, No. 1:17-cv-88, 2018 WL 6033531, at *5 (W.D. Mich. Aug. 27, 2018), *report and recommendation adopted*, 2018 WL 4443071 (W.D. Mich. Sept. 18, 2018); *see also Faber v. Ciox Health, LLC*, 944 F.3d 593, 596 (6th Cir. 2019) (noting that "HIPAA doesn't authorize a private cause of action."). Plaintiff's claim asserting violations of HIPAA will, therefore, be dismissed.

### 3.   First Amendment Claims

#### a.   Retaliation

Underlying Plaintiff's complaint are allegations that all of the named Defendants retaliated against him via their actions or inactions, as set forth above, because of his litigation in *Cook v. Corizon*. The Sixth Circuit agreed with this Court that Plaintiff had failed to set forth a First Amendment retaliation claim against Defendants Luther, Davids, Traylor, and Zupon premised upon the loss of Plaintiff's papers and the mishandling of his grievance. (ECF No. 38, PageID.466.) The Sixth Circuit declined to address whether any of Plaintiff's other allegations, which were initially dismissed as misjoined, set forth a plausible retaliation claim. (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Upon review of Plaintiff's amended complaint, the Court concludes that Plaintiff merely alleges the ultimate fact of retaliation with respect to all named Defendants. He has not presented

any facts to support a conclusion that any of the Defendants retaliated against him by taking the actions set forth above because Plaintiff filed a civil rights complaint against health care providers for conduct that occurred while Plaintiff was incarcerated at MBP and ICF. Even if the conduct alleged occurred in temporal proximity to when Plaintiff was litigating *Cook v. Corizon*, the Sixth Circuit has been reluctant to find that temporal proximity, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, 801 F. App'x 956, 960–61 (6th Cir. 2020), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive). The Court, therefore, will dismiss Plaintiff's remaining retaliation claims against all Defendants.

### b.      Access to the Courts

Plaintiff suggests that Defendants Davids, Vashaw, Traylor, Howard, Kelley, Wellman, and Unknown Party #3 violated his First Amendment rights by separating him from his legal property and denying him paper and legal access for eleven days. (ECF No. 18, PageID.326.)[8]

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail

---

[8] Plaintiff also alleges that Defendants Zupon, Novak, Traylor, and Davids failed to provide Plaintiff with copies of discovery requests that Plaintiff requested his litigation in *Cook v. Corizon*. The Court previously dismissed those claims (ECF No. 26, PageID.406–10), and the Sixth Circuit affirmed the dismissal (ECF No. 38, PageID.467). The Court, therefore, will not revisit those access to the courts claims.

18

them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)

19

(citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

The Court has already concluded that Plaintiff's underlying civil rights claim in *Cook v. Corizon* is the type of case for which there can be an actual injury, and that the claims Plaintiff raised in that action were not clearly frivolous. (ECF No. 26, PageID.408.) Plaintiff, however, fails to allege sufficient facts to show how his inability to access his legal materials and his placement on paper restriction for eleven days closed off his access to the courts. As the Court previously noted, Plaintiff does not allege, and the Court does not discern, why he could not have reproduced any lost documents in time to comply with the February 25, 2019, deadline for discovery in *Cook v. Corizon*. *See* Order, *Cook v. Corizon Health, Inc.*, No. 2:18-cv-25 (W.D. Mich.), (ECF No. 39, PageID.461). Moreover, between late November 2018 and the discovery deadline in late February 2019, Plaintiff filed more than 10 motions, briefs, objections, and responses. Three of those motions sought preliminary injunctive relief. *See* Mots., *Cook v. Corizon Health, Inc.*, No. 2:18-cv-25 (W.D. Mich.), (ECF Nos. 69, 77, 98). Finally, as previously noted, Plaintiff simply fails to explain how his placement on paper restriction and inability to access his legal documents for eleven days specifically frustrated his litigation. (ECF No. 26, PageID.409.)

Plaintiff fails to allege facts to support an inference that he suffered an actual injury from his placement on paper restriction and inability to access his legal documents for eleven days. The Court, therefore, will dismiss his First Amendment access to the courts claims premised upon these restrictions against Defendants Davids, Vashaw, Traylor, Howard, Kelley, Wellman, and Unknown Party #3.

### 4.    Fifth Amendment Claims

#### a.    Due Process

Throughout his amended complaint, Plaintiff vaguely suggests that numerous Defendants have violated his Fifth Amendment rights. The Court presumes that Plaintiff is referring to the Fifth Amendment's Due Process Clause. That clause, however, applies only to claims against federal employees. Here, Plaintiff has sued the MDOC and employees of the MDOC. Plaintiff, therefore, cannot maintain Fifth Amendment due process claims, and such claims will be dismissed. *See, e.g.*, *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

#### b.    Double Jeopardy

Plaintiff suggests that Defendants Wood, Howard, Brown, and Luther violated his Fifth Amendment right to be free from double jeopardy during his misconduct proceedings. (ECF No. 18, PageID.330.) The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Although the language "jeopardy of life or limb" suggests the protection only applies to the most serious infractions, "the Clause has long been construed to mean something far broader than its literal language." *Breed v. Jones*, 421 U.S. 519, 527–28 (1975) (citing *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 170–73 (1874)). The Clause prohibits "a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 769 n.1 (1994) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

The Double Jeopardy Clause, however, does not apply to all punishments. "[J]eopardy describes the risk that is traditionally associated with a criminal prosecution." *Breed*, 421 U.S. at 528 (citing *Price v. Georgia*, 398 U.S. 323, 326, 329 (1970)). For that reason, the Supreme Court has determined that the Double Jeopardy Clause "protects only against the imposition of multiple *criminal punishments* for the same offense and then only when such occurs in successive proceedings." *United States v. Beaty*, 147 F.3d 522, 524 (1998) (quoting *Hudson v. United States*, 522 U.S. 93, 99 (1997)). In other words, the risk that jeopardy describes "is not present in proceedings that are not 'essentially criminal.'" *Breed*, 421 U.S. at 528 (quoting *Helvering v. Mitchell*, 303 U.S. 391, 398 (1938)). "The Double Jeopardy Clause was not intended to inhibit prison discipline." *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2008); *see also Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974) (concluding that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply"). Because "[p]rison disciplinary hearings are not part of a criminal prosecution . . . [they] do not implicate double jeopardy concerns." *Lucero v. Gunter*, 17 F.3d 1347, 1351 (10th Cir. 1994). Accordingly, Plaintiff's Fifth Amendment double jeopardy claims will be dismissed.

### 5.    Eighth Amendment Claims

Plaintiff contends that several of the named Defendants violated his Eighth Amendment rights in various ways.[9] The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46

---

[9] The Court previously dismissed Plaintiff's Eighth Amendment claims against Defendants Luther, Novak, Zupon, Davids, and Traylor premised upon the loss of Plaintiff's legal documents. (ECF No. 26, PageID.405–06.) The Sixth Circuit affirmed the dismissal of such claims. (ECF No. 38, PageID.466–67.) The Court, therefore, will not revisit these Eighth Amendment claims.

(1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his

knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a.    Verbal Harassment

Plaintiff suggests that Defendant Howard violated his Eighth Amendment rights by threatening him and calling him a "an offense, degrading, racially hateful name." (ECF No. 18, PageID.324.) Specifically, Plaintiff contends that Defendant Howard called him "white boy" and threatened to "gas" Plaintiff. (*Id.*) While unprofessional, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* The Court, therefore, will dismiss Plaintiff's Eighth Amendment claim premised upon verbal harassment against Defendant Howard.

### b.    Use of Restraints and Excessive Force

Plaintiff contends that Defendants Davids, Vashaw, Kelley, and Stambaugh authorized Plaintiff's placement "in extremely tight restraint cuffs and an improper tightened drop chain/kick stop chain position." (ECF No. 18, PageID.326.) He alleges further that Defendants Davids, Vashaw, Kelley, Mygrant, Martens, Farnwalt, Wells, Jex, Watkins, and Caffiero authorized or participated in the use of excessive force against Plaintiff. Plaintiff contends that he was kneed, kicked, and punched, and that he was thrown to the ground and had his face slammed into the floor. (*Id.*, PageID.327.) Plaintiff was then left in a "hog chained fetal restraint position for six (6) days." (*Id.*) He alleges that the tight restraints caused pain, bruising, and swelling, and that he could

not stand correctly. (*Id.*, PageID.335.) Plaintiff was unable to reach his water button and toilet and soiled himself on the floor. (*Id.*, PageID.337.)

Plaintiff's claims must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

Not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9 (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights") (internal quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011). Given Plaintiff's allegations, the Court concludes that Plaintiff has set forth plausible Eighth Amendment personal capacity damages claims for the use of restraints and excessive force against Defendants Davids, Vashaw, Kelley, Stambaugh, Mygrant, Martens, Farnwalt, Wells, Jex, Watkins, and Caffiero.

### c.    Mental Health Issues

Plaintiff alleges that Defendants Maranka, Dozeman, and Unknown Party #2 were deliberately indifferent to Plaintiff's "failing mental health, his decision making[,] and his sufferings while he was imposed in restraints for ten (10) days." (ECF No. 18, PageID.328.) He

also suggests that Defendants Washington and Unknown Party #3 fail to "have a mental health crisis treatment plan in place for prisoners imposed in any type of restraints for a prolonged period of time." (*Id.*)

The Eighth Amendment requires prison officials to provide medically necessary mental health treatment. *See Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Plaintiff's allegations are simply too conclusory for the Court to conclude that Defendants Maranka, Dozeman, Unknown Party #2, Washington, and Unknown Party #3 were deliberately indifferent to his mental health needs. Plaintiff vaguely alleges that they failed to have a treatment plan in place and "did nothing" but "[sit] by while the Plaintiff was improperly restrained." (ECF No. 18, PageID.339.) "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Supervisory liability cannot be based upon a mere failure to act. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Moreover, Plaintiff's amended complaint is devoid of facts from which the Court could infer that any of these individuals were personally aware of Plaintiff's mental health issues. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims premised upon his mental health against Defendants Maranka, Dozeman, Unknown Party #2, Washington, and Unknown Party #3.

### d.      Misconduct Proceedings

Plaintiff suggests that Defendants Mygrant, Leitheim, Stambaugh, Luther, Demps, Wood, Howard, and Brown violated his Eighth Amendment rights during misconduct proceedings on what Plaintiff believes were fraudulent misconducts. (ECF No. 18, PageID.329–30.) Plaintiff, however, has not alleged facts from which the Court could infer that these misconduct proceedings deprived Plaintiff of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347). Moreover, the filing of allegedly false misconducts does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, No. 98-2139, 1999 WL 1021856, at *2 (6th Cir. 1999); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001). The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims concerning misconduct proceedings that are asserted against Defendants Mygrant, Leitheim, Stambaugh, Luther, Demps, Wood, Howard, and Brown.

### e.      Access to Medical Records

Finally, Plaintiff suggests that Defendant Washington violated his Eighth Amendment rights by failing to correct "the policies and procedures that deny an indigent litigant access to his medical records or information within his medical records." (ECF No. 18, PageID.331.) Plaintiff, however, has no Eighth Amendment right to review or obtain copies of his medical records. *See Blanton v. Blue*, No. 4:16-cv-P10-JHM, 2016 WL 2858922, at *3 (W.D. Ky. May 16, 2016); *see also Moore v. Chapedelaine*, No. 3:15-cv-775 (VAB), 2015 WL 4425799, at *6 (D. Conn. July 15, 2015) (concluding that "prisoners have no constitutional right to review or obtain copies of their prison medical records"); *Martikean v. United States*, No. 3:11-cv-1774-M-BH, 2012 WL 1986919, at *10 (N.D. Tex. Apr. 6, 2012) (finding that "there is no constitutional requirement that an inmate be given the right to review or obtain his medical records"); *Ball v. Famiglio*, 1:08-cv-700, 2011 WL 1304614, at *27–28 (M.D. Pa. Mar. 31, 2011) ("While inmates have a constitutional

right to access to medical care, . . . there is no authority for an Eighth Amendment right to review medical records."). Plaintiff's Eighth Amendment claim against Defendant Washington premised upon his inability to review his medical records will, therefore, be dismissed.

### 6.    Fourteenth Amendment Claims

#### a.    Equal Protection

Plaintiff alleges that Defendant Wellman issued him a "fraudulent misconduct" for partially covering his cell window with a sign despite not issuing misconducts to other inmates who had paper or signs in their windows. (ECF No. 18, PageID.333.) He also suggests that Defendants Davids, Vashaw, Traylor, Howard, Kelley, Wellman, and Unknown Party #3 "treated [him] differently from other prisoners who were engaged in the same unobstructive conduct" by restricting Plaintiff's access to paper and his legal property. (*Id.*, PageID.326.) The Court construes Plaintiff to assert a Fourteenth Amendment equal protection claims.

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Plaintiff does not identify a fundamental right, and he does not allege that he is a member of a suspect class. "[P]risoners are not a suspect class," *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000), "nor are classifications of prisoners," *Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003).

To state an equal protection claim in a class-of-one case, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v.*

*Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Id.* (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc.*, 470 F.3d at 298)). "Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects." *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v.*

*Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018).

Plaintiff's equal protection claims are wholly conclusory. He fails to identify any fellow inmate or individual who was similar in all relevant aspects. Moreover, Plaintiff's amended complaint is wholly devoid of facts suggesting that Defendants Wellman, Davids, Vashaw, Traylor, Howard, Kelley, and Unknown Party #3 intentionally and arbitrarily discriminated against him. Plaintiff's conclusory allegations simply do not suffice to state a claim. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). The Court, therefore, will dismiss Plaintiff's Fourteenth Amendment equal protection claims.

### b.      Due Process—Deprivation of Property

Plaintiff contends that Defendant Mygrant violated his Fourteenth Amendment due process rights by removing Plaintiff's television from his cell without "fil[ing] the necessary property removal documents." (ECF No. 18, PageID.325.) He also suggests that Defendants Davids, Vashaw, Traylor, Howard, Kelley, Wellman, and Unknown Party #3 violated his Fourteenth Amendment due process rights by separating him from his legal property.

Plaintiff's claims, however, are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. *Id.* at 541. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Id.* at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson*, 468 U.S. at 530– 36. Because Plaintiff's claims are premised upon allegedly unauthorized

acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claims against Defendants Mygrant, Davids, Vashaw, Traylor, Howard, Kelley, Wellman, and Unknown Party #3 regarding the deprivation of his property will be dismissed.

### c.    Due Process—Misconduct Proceedings

Plaintiff contends that numerous Defendants violated his Fourteenth Amendment due process rights with respect to misconduct proceedings. He alleges that Defendant Mygrant issued a "fraudulent assault and battery misconduct," and that Defendants Leitheim and Stambaugh "fraudulently reported to the hearings officer that the Plaintiff did not wish to attend the hearing." (ECF No. 18, PageID.329.) Further, Plaintiff claims that Defendants Davids and Demps ignored Plaintiff's requests for misconduct appeal forms (*id.*), and that Defendants Wood, Howard, Brown, and Luther fraudulently stated that Plaintiff did not wish to attend misconduct hearings and failed to respond to his requests for appeal forms. (*Id.*, PageID.330.)

31

A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Plaintiff does not allege that any misconduct conviction had any effect on the duration of his sentence—and he cannot. Plaintiff is serving sentences imposed in 1999 and 2005 for crimes committed in 1998 and 2004. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=290601 (last visited Mar. 20, 2023). The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[10] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440; *see also Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009). Building on these rulings, in *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011), the court held that under the current iteration of Michigan's good behavior reward scheme, known as disciplinary time,[11] a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it

---

[10] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

[11] For some crimes committed after December 15, 1998, and all crimes committed after December 15, 2000, Michigan prisoners are "penalized" with "disciplinary time" under a statute that abolished the disciplinary credit system. Mich. Comp. Laws § 800.34.

does not necessarily affect the length of confinement. *See also Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *report and recommendation adopted*, 2011 WL 5491196 (E.D. Mich. Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due process claim based on a loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461–62 (6th Cir. 2008).

As to the second category set forth in *Sandin*, Plaintiff contends that he "is on years of sanctions." (ECF No. 18, PageID.330.) His amended complaint suggests that he was sanctioned to a total of 1,050 days of loss of privileges status because of the numerous misconducts. (*Id.*, PageID.341.) Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." *See* MDOC Policy Directive 03.03.105, Attach. E. (eff. July 1, 2018). Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs or activities under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause was not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (concluding that prisoners have no constitutional right to rehabilitation); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (finding that participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v.*

33

*Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (concluding that prisoners have no constitutional right to rehabilitative services).

For the foregoing reasons, Plaintiff fails to state Fourteenth Amendment due process claims against Defendants Mygrant, Leitheim, Stambaugh, Davids, Demps, Wood, Howard, Brown, and Luther. Accordingly, such claims will be dismissed.

### d.    Substantive Due Process

Plaintiff also vaguely asserts that numerous Defendants violated his Fourteenth Amendment rights premised upon their actions (or inactions) set forth above. For example, Plaintiff contends that the use of restraints and force, as well as the allegedly false misconducts, violated his Fourteenth Amendment rights. The Court construes Plaintiff's complaint to be asserting substantive due process claims.

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). Plaintiff's amended complaint does not allege that any named Defendant acted in any way that the Court could conclude rises to the level of conscience-shocking.

Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an

amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Eighth Amendments, as well as the Fourteenth Amendment's protections regarding procedural due process, apply to Plaintiff's claims for relief. Consequently, any intended substantive due process claims will be dismissed.

### D.    State Law Claims

As noted above, Plaintiff also alleges several state law claims. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *see also Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 455 (6th Cir. 2021) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)) (recognizing that once a federal court no longer has federal claims to resolve, it "should not ordinarily reach the plaintiff's state-law claims); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon*, 465 F.3d at 728 ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal,

35

however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because the Court has dismissed all of Plaintiff's federal claims against Defendants Luther, Novak, Zupon, Traylor, Wood, Howard, Maranka, Dozeman, MDOC, Brown, Leitheim, Wellman, Washington, Demps, and Unknown Parties #1, #2, and #3, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims against those Defendants. Such claims will be dismissed without prejudice to Plaintiff's ability to bring those claims in state court. Because Plaintiff continues to have pending federal claims against Defendants Davids, Vashaw, Kelley, Stambaugh, Mygrant, Martens, Farnwalt, Wells, Jex, Watkins, and Caffiero, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against them.

## III.     Reconsideration of Filing Restrictions

As noted above, the Court imposed prospective filing restrictions on Plaintiff because of his failure to comply with the Magistrate Judge's August 20, 2021, order (ECF No. 10). Specifically, the Court set forth the following restrictions: (1) Plaintiff must use the form required by this Court to file any complaint; (2) Plaintiff must limit the statement of his claims to factual allegations and not legal conclusions; (3) Plaintiff may not abandon pages of the form, but can supplement the form with attached pages; (4) Plaintiff must limit all future complaints to 25 pages; and (5) Plaintiff must comply with the rules of joinder. (ECF No. 26, PageID.393.) The Court told Plaintiff that any failure to comply with these restrictions "may result in the summary dismissal without prejudice of a future complaint." (*Id.*)

The Sixth Circuit concluded that the Court erred in imposing filing restrictions upon Plaintiff primarily for misjoining claims because of its conclusion that Plaintiff's claims were properly joined. (ECF No. 38, PageID.465.) The Sixth Circuit "[left] it to [this Court] on remand

whether to reimpose similar filing sanctions for the other reasons provided in its order." (*Id.*) The Court will not reimpose similar filing sanctions against Plaintiff at this time. Plaintiff is, however, encouraged to use the form complaint provided by this Court to prepare any future complaints, and to limit his statement of his claims to factual allegations. Moreover, Plaintiff must still comply with the rules of joinder, and Plaintiff is advised that failure to do so may result in the dismissal of claims without prejudice as misjoined.

### Conclusion

In light of the Sixth Circuit's mandate, the Court will vacate its previous opinion, order, and judgment (ECF Nos. 26, 27, 28) to the extent that the Court initially dismissed claims as misjoined or because the Court declined to exercise supplemental jurisdiction over them, as well as to the extent that the Court imposed prospective filing restrictions on Plaintiff.

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against the following Defendants will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c): Defendants Luther, Novak, Zupon, Traylor, Wood, Howard, Maranka, Dozeman, MDOC, Brown, Leitheim, Wellman, Washington, Demps, and Unknown Parties #1, #2, and #3. The Court will dismiss Plaintiff's state law claims against those Defendants without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims seeking declaratory and injunctive relief; (3) Plaintiff's First Amendment retaliation and access to the Courts claims; (4) Plaintiff's Fifth Amendment due process and double jeopardy claims; (5) Plaintiff's Eighth Amendment claims premised upon (a) verbal harassment, (b) mental health issues, (c) misconduct proceedings, and (d) lack of access to medical records; and

(5) Plaintiff's Fourteenth Amendment due process and equal protection claims. The following claims remain in the case: (1) Plaintiff's Eighth Amendment personal capacity damages claims against Defendants Davids, Vashaw, Kelley, Stambaugh, Mygrant, Martens, Farnwalt, Wells, Jex, Watkins, and Caffiero premised upon the use of restraints and excessive force; and (2) Plaintiff's state law claims against Defendants Davids, Vashaw, Kelley, Stambaugh, Mygrant, Martens, Farnwalt, Wells, Jex, Watkins, and Caffiero.

An order consistent with this opinion will be entered.


Dated:    March 21, 2023                                    /s/ Paul L. Maloney
                                                            Paul L. Maloney
                                                            United States District Judge