UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL COOK #290601,

    Plaintiff,                             Hon. Paul L. Maloney

v.                                                   Case No. 1:21-cv-613

ERICA HUSS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 62) and Defendant's Motion for Summary Judgment (ECF No. 80). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions both be denied.

## BACKGROUND

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP). The events giving rise to this action, however, occurred at the Ionia Correctional Facility (ICF). Plaintiff sued the MDOC, MDOC Director Heidi Washington, and MDOC "Manager/Director of Mental Health" Unknown Party #1. Plaintiff also sued the following ICF staff: Warden John Davids; Deputy Warden Unknown Vashaw; Assistant Deputy Warden (ADW) Unknown Traylor; Unit Chief Unknown Maranka; Assistant Resident Unit Supervisor

-1-

(ARUS) Unknown Luther; Captain Unknown Wood; Lieutenants Unknown Brown, Unknown Howard, Unknown Kelley, and Unknown Leitheim; Correctional Officers Unknown Mygrant, Unknown Wellman, Unknown Stambaugh, Unknown Martens, Unknown Farnwalt, Unknown Wells, Unknown Jex, and Unknown Watkins; Hearings Investigator Unknown Demps; Law Librarian Techs Unknown Zupon and Unknown Novak; Psychiatrist Unknown Party #2; Psychologist Unknown Dozeman; Nurse Unknown Caffiero; and Unknown Party #3.  Plaintiff sued all Defendants in their official and personal capacities.

The Court has previously detailed the factual allegations in Plaintiff's amended complaint and dismissed a great many of Plaintiff's claims.  (ECF No. 42).  At this juncture, the only claims remaining in this matter are (1) Eighth Amendment personal capacity claims against Defendants Davids, Vashaw, Kelley, Stambaugh, Mygrant, Martens, Farnwalt, Wells, Jex, Watkins, and Caffiero premised upon the use of restraints and excessive force; and (2) Plaintiff's state law claims against Defendants Davids, Vashaw, Kelley, Stambaugh, Mygrant, Martens, Farnwalt, Wells, Jex, Watkins, and Caffiero.  (ECF No. 42).

With respect to his remaining Eighth Amendment claims, Plaintiff alleges the following.  (ECF No. 18).  On November 5, 2018, Plaintiff was restrained and removed from his cell by the ICF Emergency Response Team and moved to the punishment wing. The following day, Defendant Kelley was escorting Plaintiff down the hallway when he stated, "I'm done playing games with this bitch."  Plaintiff was then placed in a shower

and his cuffs removed. Defendant Stambaugh then placed Plaintiff in "leather and chain restraints." Stambaugh "yank[ed] and wrench[ed]" the restraints "like he was tethering a horse." Stambaugh placed the "cuff and ankle straps on extremely tight causing. . .pain." A nurse examined the restraints and indicated that she "could not get her fingers under the cuffs." Stambaugh then tightened "the drop chain to a point where Plaintiff could barely stand." Plaintiff was then placed in a cell and his requests to be removed from the restraints were ignored.

On November 9, 2018, Defendant Kelley entered Plaintiff's cell with the Emergency Response Team, which included Defendants Mygrant and Caffiero. Kelley informed Plaintiff that he had been instructed by Defendant Vashaw to "tighten the restraints." Plaintiff objected on the ground they "were already to[o] tight [and] cutting off his circulation and causing severe pain." An unidentified Corrections Officer responded by kicking and kneeing Plaintiff several times. Defendant Mygrant then began punching Plaintiff. Plaintiff fell to the ground at which point Mygrant "wrenched the drop chain" and "locked it with a padlock" leaving Plaintiff "in a hog chained fetal position." On November 10, 2018, a nurse observed Plaintiff and determined that his "cuffs were too tight." Plaintiff's cuffs were removed but his drop chain remained in place causing Plaintiff to be restrained in a "fetal restraint position." Plaintiff's restraints were removed on November 16, 2018.

-3-

Defendants Davids, Vashaw, Kelley, Stambaugh, Mygrant, Martens, Farnwalt, Wells, Jex, Watkins, and Caffiero now move for summary judgment on the ground that Plaintiff failed to properly exhaust his administrative remedies. Plaintiff has responded to Defendants' motions. (ECF No. 72, 93). The Court finds that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 993 F.3d 465 at 474.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."

*Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. The current version of this Policy, which took effect on March 18, 2019, superseded the prior version which had been in effect since July 9, 2007. (MDOC Policy Directive 03.02.130 (Mar. 18, 2019). The events relevant to the present motion are governed by the prior version of this Policy as such occurred prior to March 18, 2019. Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ P (July 9, 2007). The prisoner must attempt to resolve the matter with staff within two days of becoming aware that there exists a grievable issue. (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. MDOC Policy Directive 03.02.130 ¶ V (July 9, 2007). The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130 ¶ R (July 9, 2007).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. MDOC Policy Directive 03.02.130 ¶ BB (July 9, 2007). If the prisoner is dissatisfied with the

Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III.  MDOC Policy Directive 03.02.130 ¶ FF (July 9, 2007).

Defendants assert that Plaintiff "did not exhaust administrative remedies on any of his claims" against them.  In support of their argument, Defendants assert that, during the relevant time period, Plaintiff pursued several grievances through all three steps of the grievance process, none of which serve to exhaust any of his remaining claims.

As noted above, Plaintiff's remaining Eighth Amendment claims concern his allegations that, from November 5, 2018, through November 16, 2018, he was improperly restrained and subjected to excessive force.  In his sworn responses to Defendants' motions, including the affidavits and sworn statements attached thereto, Plaintiff asserts the following.

On or about November 5, 2018, Plaintiff was placed on "paper restrictions."  (ECF No. 72 at PageID.708).  While on paper restriction, Plaintiff could only receive a Step I grievance form with staff approval.  (*Id.*).  From November 6, 2018, through November 22, 2018, Plaintiff requested grievance forms on *numerous* occasions so that he could grieve, among other things, the events and circumstances giving rise to his remaining Eighth Amendment claims.  (*Id.* at PageID.709-19, 747, 749-54, 788-91).[1]  Plaintiff's requests for grievance forms were all denied.  (*Id.*).

---

[1] In his pleadings, Plaintiff often asserts that he requested "legal access."  At hearing, Plaintiff explained that this phrase was a shorthand of sorts for requesting grievance forms.

Prisoners are only required to exhaust their *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). Accordingly, a prisoner is excused from exhausting his administrative remedies if such remedies are "not available." *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022). Moreover, a prisoner's "administrative remedies are not 'available' if prison employees refuse to provide inmates with necessary grievance forms when requested." *Id.* at 297.

Plaintiff has presented evidence creating a factual dispute on the question whether he exhausted his *available* administrative remedies. Once Plaintiff presented evidence that he was "prevented from exhausting his remedies," Defendants were obligated to "present evidence showing that [Plaintiff's] ability to exhaust was not hindered." *Id.* at 295. The Court afforded Defendants an opportunity to present evidence and potentially overcome Plaintiff's evidence. Defendants, however, declined the opportunity to present testimony, declining even to question Plaintiff under oath.

Defendants instead merely supplemented their motions with evidence showing that Plaintiff filed a Step I grievance on November 26, 2018, concerning matters unrelated to his remaining claims. (ECF No. 119). According to Defendants, the fact that Plaintiff was later able to file a grievance on other matters undermines Plaintiff's claim that his attempts to obtain grievance forms was thwarted. The Court is not persuaded. According to the evidence submitted by Plaintiff, and unrefuted by Defendants, by November 26, 2018, the unavailability of administrative remedies vis-à-vis the claims remaining in this matter was already established. That Plaintiff was

-9-

subsequently able to file a grievance concerning other matters simply fails to advance Defendants' position.

In *Surles v. Andison*, 678 F.3d 452 (6th Cir. 2012), a prisoner argued that his attempts to exhaust his administrative remedies were thwarted by prison officials who refused to process his grievances. *Id.* at 457. The MDOC countered that "the number of grievances filed [by Surles] as reflected in the grievance screen, actually demonstrates that despite any allegation of being prevented from utilizing the grievance system, that Surles was able to file grievances on a more than regular basis." *Ibid.* The court rejected the MDOC's argument noting that "such an inference does not adequately show that MDOC employees did not interfere with Surles's ability to utilize the grievance process on certain occasions or as to particular claims. That Surles was able to file some grievances does not mean that he was able to file all relevant grievances or that he was not prevented from timely filing the grievances." *Id.* at 457-58.

The same rationale applies with equal force here. The fact that Plaintiff was able to file a grievance on November 26, 2018, is insufficient to counter Plaintiff's evidence and satisfy Defendants' burden. Interpreting the evidence before the Court in a light most favorable to Plaintiff, the Court concludes that Defendants have failed to demonstrate the absence of a genuine factual dispute of fact on the question whether Plaintiff exhausted his *available* administrative remedies. Accordingly, the undersigned finds that Defendants are not entitled to relief.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' motions for summary judgment (ECF No. 62, 80) both be denied.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: January 26, 2024              /s/ Phillip J. Green
                                    PHILLIP J. GREEN
                                    United States Magistrate Judge